WATKINS, Judge.
This is a suit brought by Mark Allen Bradford, of the full age of majority, and Mrs. Anne Crowell Wilson, divorced wife of Donald E. Bradford, in her capacity as tu-trix of the minor child, Amy Crowell Bradford, to force the resignation of E. Briggs Wharton, judicially appointed successor trustee to Ben F. Downing, Jr. of the Donald E. Bradford Trust, and to surcharge Wharton for revenues and profits that allegedly were lost to the trust through Wharton’s alleged breach of trust. The trial court rendered judgment in favor of Wharton, generally, ordering that Wharton’s resignation as trustee be accepted,[1] but in other respects declining to grant plaintiffs’ demands. Plaintiffs have appealed this judgment. We amend the judgment of the trial court to surcharge Wharton for breach of trust and to force Wharton to reconstitute the trust.
Donald E. Bradford was a member of the Baton Rouge law firm of Sanders, Miller, Downing and Kean. By instrument dated June 15,1971, Donald Bradford transferred 40.7 shares of the common stock of Security Abstract & Title Company of Baton Rouge, Inc., represented by Certificate No. 49, in trust to Ben R. Downing, Jr., as trustee, with the settlor’s three then minor children, Mark Allen Bradford, Leigh Ann Bradford[2], and Amy Crowell Bradford, as beneficiaries of income and principal in equal shares. The trust was to last until each beneficiary reached age 21 and then to terminate. Named as successor trustee in the trust instrument in the event the office of trustee should become vacant was R. Gordon Kean.
The trust instrument contained the following exculpatory language in Section 6.5:
6.5 The Trustee shall not be in any manner liable or responsible by reason of any loss, injury, or destruction that may happen to or be done to the property in any of the trusts or any part of such property by or through the action or neglect of the Trustee or by or through the action of neglect of any other person, nor shall the Trustee be answerable or responsible for any act or thing whatsoever except the Trustee’s own willful fault or gross negligence.
A fourth child, Beth Bradford, was born after the trust was created and is not a beneficiary.
Donald Bradford and Anne Crowell Bradford were divorced in October, 1979, with Anne Crowell Bradford being granted custody of the beneficiaries, who were still minors. Anne Crowell Bradford was further named tutrix of the three beneficiaries.
Allen Crowell, maternal grandfather of the three minors, had added the sum of $54,000.00 to the trust by a series of checks. Other increases in trust corpus came from profits to the trust, there being no trust corpus added other than the additions made by Allen Crowell.
In 1981, Ben R. Downing, Jr., R. Gordon Kean, and E. Briggs Wharton filed a petition to have Wharton appointed successor trustee to Ben R. Downing, and by ex parte order dated April 16, 1981, Wharton was named trustee in the place and stead of Downing. The ex parte order contained the following language pertinent to the issues presently presented:
*1215 IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Ben R. Downing, Jr. and E. Briggs Wharton, shall not be required to furnish any accounting in regard to the change of the Trustee, except as for such accountings as are required under the terms of the Trust instrument.
Section 6.1 of the trust instrument reads as follows:
6.1 Each year the Trustee shall render an account of the administration of the trust to the beneficiaries of the trust in accordance with the provisions of Section 2088 of the Louisiana Trust Code, as it may hereafter be amended.
Donald Bradford withdrew from the law firm of Sanders, Miller, Downing & Kean in 1982.
Ben R. Downing furnished no final accounting, and no annual accountings in the course of his administration. His successor, Wharton, contends in his brief that annual accountings were furnished for the years of 1971-1981 by the filing of income tax returns. Wharton further contends that as administrator of the minor children’s estate in the years before the divorce, Bradford waived further accounting.
LSA-R.S. 9:2088 B and C read as follows:
B. A trustee shall render to a beneficiary or his legal representative at least once a year a clear and accurate account covering his administration for the preceding year. His first annual account shall relate to the calendar year during which he became responsible for the trust property, or, at his option, the first accounting period of not more than twelve months and shall be rendered within ninety days after the expiration of that calendar year or accounting period. Each annual account shall show in detail all receipts and disbursements of cash and all receipts and deliveries of other trust property during the year, and shall set forth a list of all items of trust property at the end of the year.
C. A trustee upon the termination, revocation, or rescission of the trust, or upon his resignation or removal, shall render to a beneficiary or his legal representative his final account covering the period elapsed since his most recent annual account (or, should the trust have terminated, or have been revoked or rescinded, during the first year, the period elapsed since he became responsible for the trust property), and setting forth the same information required for annual accounts.
It would appear that Bradford as legal representative of his minor children had the capacity to receive annual accountings until his marriage was dissolved by divorce in October, 1979, but that he never had the procedural capacity to waive the filing of an annual accounting or to lessen the requirements of the Trust Code in LSA-R.S. 9:2088 B by accepting an income tax form in lieu of an accounting, as an income tax form would not contain all of the information required for an annual accounting by 9:2088 B.
As to failure of Downing as trustee to file a final account, it should be noted that the language of the ex parte order relieving Downing of the duty to file any but an annual accounting is of no effect, as the beneficiaries were not served with any pleadings that would furnish notice that Downing as trustee was being relieved of that duty, although that duty is clearly imposed by LSA-R.S. 9:2088 C. Although the trustee may be relieved from duties that would be placed upon him by the administrative provisions of the Trust Code, before doing so, the presentation of argument, oral or written, is contemplated which, obviously requires an adversary hearing. LSA-R.S. 9:2065, Bogert, Trusts and Trustees, (2d Ed.Revised) § 561. No such adversary hearing ever took place. Had a final account been required of Downing, rather than being waived, Wharton would have been in a position to determine whether Downing had committed a breach of trust. Wharton insists that he had no means by which he could determine whether the trust had properly been administered by Downing. It is Wharton’s own fault that by waiving a final accounting he deprived himself of that means.
*1216 The trustee is liable in certain instances for breach of trust committed by a predecessor trustee. Those cases are listed in LSA-R.S. 9:2204, which reads as follows:
A trustee shall not be liable to a beneficiary for a breach of trust committed by a predecessor trustee, unless he:
(1) Knows or should know of a situation constituting a breach of trust committed by his predecessor and improperly permits it to continue; or
(2) Neglects to take proper steps to compel the predecessor to deliver the trust property to him; or
(3) Neglects to take proper steps to redress a breach of trust committed by the predecessor.
The plaintiff beneficiaries contend that Wharton as successor trustee is liable for certain alleged breaches of trust committed by his predecessor, Downing. One of the foremost instances of alleged breaches of trust is that involving the alleged purchase by the trust of a partnership interest in Inniswold Partnership. It is the beneficiaries’ contention that the following transactions are evidence of the alleged sale by Donald Bradford to the trust of a partnership interest in Inniswold:
$2,598.40 paid to Donald E. Bradford in 1975 by the trust.
1,102.50 paid to Donald E. Bradford in 1975 by the trust.
924.00 paid to Inniswold Properties in 1975 by the trust.
700.00 paid to Inniswold Properties in 1976 by the trust.
812.00 paid to Inniswold Properties _ in 1977 by the trust.
$6,136.90 Total
During the time that both Downing and Wharton were trastes, distributions total-ling $15,236.83 were made to Bradford from the Inniswold Partnership. The appellant beneficiaries claim that they are entitled to that sum, plus legal interest from the unspecified dates of each distribution.
It appears that the Inniswold Partnership interest belonged to the trust, and that the trust is entitled to sums that were improperly distributed to Donald Bradford, together with legal interest. Trust funds, transferred directly or though Bradford, went to pay for the Inniswold interest. There is no evidence that a simple loan was made to Bradford, as Wharton contends. The appellant beneficiaries are thus entitled to the sum of % of $15,236.83, the amount of distributions from Inniswold.
There were other smaller transactions by Downing that involved improper distribution of trust income or principal, which we catalogue as follows:
(1) $1,000.00 was paid to Gully & Associates to purchase immovable property, which purchase Bradford claims was for the four children. As only three children were beneficiaries of the trust, and as no evidence was presented to show the alleged sale was for the benefit of the four children, it appears the transaction was an improper diversion of trust funds from which the three beneficiary children received no benefit.
(2) $2,100.00 was paid to Howard, Weil to purchase stock for Beth Bradford. Beth Bradford was the youngest of the four children, and not a beneficiary of the trust. It thus appears this transaction was an improper diversion of trust funds.
(3) $6,000.00 of trust income was lent by Downing through Donald Bradford, who in fact controlled the administration of the trust, to Bradford’s brother, without a note or security, although Bradford’s brother has subsequently applied for bankruptcy. This was an imprudent and improper use of trust funds, as the trust must be administered solely to benefit the beneficiaries. LSA-R.S. 9:2082.
(4) $1,000.00 was spent for Bradford’s children’s vacations, which was a form of support of the minor children. This transaction was prohibited by the trust instrument, which forbade the use of trust funds to fulfil Bradford’s duty to support his *1217 children. Furthermore, one of the children, Beth Bradford, was not a beneficiary.
(5) $1,500.00 was spent on the children’s vacations in August of 1980, after the divorce, when Bradford no longer administered his children’s estates, and had no authority to determine how his children’s property was to be used.
(6) $75.00 and $22.52 were spent for van rental and $100.00 was earmarked “Rice Festival”, after Bradford’s divorce, when Bradford had no authority to determine how his children’s property was to be used.
(7) $349.00 was paid to the LSU athletic department for football tickets for the four children in May of 1980, although one child was not a beneficiary and Bradford no longer had authority to administer his children’s affairs.
The sums improperly used in these seemingly small transactions came to $12,-146.52, and two-thirds of that sum must be restored to the trust, as Wharton is liable to the trust for having failed to take action to redress Downing’s breach of trust. LSA-R.S. 9:2204.
In the years after Wharton succeeded Downing as Trustee, Bradford made the following diversions of trust funds, with Wharton’s approval:
(1) $405.00 for LSU football tickets in May 1982. At that time, Bradford was no longer administrator of the estates of his children, his former wife, Anne, being tu-trix, and Bradford had no right to spend the children’s money, even in their own interest.
(2) $307.50 to American Express for the children’s vacation. This occurred in July 1982, while the children were still minors, and Bradford was no longer administrator of the estates of his minor children, his former wife being tutrix. This expenditure was improper.
(3) $3,500.00 was withdrawn from the trust in October 1984 to pay for the vacation of Leigh Bradford and to give Leigh $1,000.00, as well as to pay for the vacation of Donald Bradford’s second wife. Although Leigh was a beneficiary of the trust, Bradford had no authority to prefer her over the other beneficiaries, or to divert trust funds for the use of his second wife.
These diversions of trust funds come to $4,212.50. Wharton committed a breach of trust in permitting Bradford to divert these funds, and Wharton must reimburse the trust for two-thirds of this sum.
Possibly the most flagrant abuse of trust occurred shortly after Downing had resigned as trustee, when Wharton was trustee. Wharton took office upon Downing’s resignation on April 16, 1982. The trust owned shares of stock in the Lehman Corporation. These shares were to some extent kept in Downing’s name for a rather lengthy period of time after Downing’s resignation. In September 1982 Bradford determined that he wanted Wharton to sell the Lehman stock, as Bradford wanted the money. On September 16, 1982, the Lehman stock was sold in two blocs, 4690.112 shares for $65,180.36, and 2,188.781 shares for $30,418.37. Bradford took the funds for his own use and gave Wharton as trustee an unsecured non-interest-bearing promissory note in the amount of $95,598.73.
Bradford also diverted other trust funds for personal expenses, so that the total of the Lehman stock proceeds diversion and the other diversions came to $114,922.71. On September 17, 1985, at the trial on the merits of the present suit, Bradford tendered $20,801.21 as interest and $6,803.71 as principal.
After the sale of the Lehman stock had taken place, the Lehman stock paid sizable dividends, which of course were of no benefit to the trust or its beneficiaries as the stock had been sold. In the meanwhile, an additional 1200 shares of Lehman stock had been sold at Bradford’s instance for $13,-652.07. The total of the lost dividends from the three sales of Lehman stock came to $61,879.67.
The sales of the Lehman stock were totally improper, as they were made solely to benefit Bradford. A trustee is required to administer the trust solely in the interest of the beneficiary. LSA-R.S. 9:2082. The *1218 three sales of the Lehman stock by Wharton were a clear breach of trust.
LSA-R.S. 9:2201 reads as follows:
If a trustee commits a breach of trust he shall be chargeable with:
(1) A loss or depreciation in value of the trust estate resulting from a breach of trust; or
(2) A profit made by him through breach of trust; or
(3) A profit that would have accrued to the trust estate if there had been no breach of trust.
Thus, Wharton as trustee must reconstitute this trust for two-thirds of the trust profit that the trust would have received had the breach of trust in selling the Lehman stock not taken place, less the interest in fact received from Bradford. Bradford belatedly at trial paid the trust the sum of $20,801.21 in interest, reducing the net loss to the trust from $61,879.67 to $40,078.46. Wharton must reconstitute the trust for two-thirds of this amount, Wharton having settled with Leigh Bradford for the remaining one-third.
The relationship between Bradford, his wife Anne, the children, and Downing and later Wharton as trustee, began completely amicably. Bradford was a young attorney with Downing’s firm and Wharton was a family friend. Great informality existed in the administration of the trust for Bradford’s children, but, unfortunately, this informality led to laxity, so that Bradford himself managed the trust, with the two successive trustees maintaining a considerable distance from the major and minor acts of administering the trust. Bradford, because of the frailties of human nature, frequently made decisions to benefit himself, rather than the three beneficiaries of the trust. For that laxity, Wharton must be surcharged. A trust must be administered solely in the interest of the beneficiaries, under trust law. LSA-R.S. 9:2082. The duties of the trustee as a fiduciary are of the highest possible responsibility. Succession of Dunham, 408 So.2d 888 (La.1981). Because Wharton failed to act with authority in the office of trustee, although he acted with Bradford’s nod of approval, Wharton must be surcharged.
Wharton contends that he is relieved of liability by the exculpatory language of Section 6.5 of the trust instrument, for the reason that if he did commit a breach of trust, the breach did not result from any willful fault or gross negligence on his part. An exculpatory clause in a trust instrument must be strictly construed. Oppenheim & Ingram, Yol. 11 Louisiana Civil Law Treatise, § 360. We find that Wharton’s breach of trust was clearly willful, both in his personal conduct in administering the trust according to the wishes of Bradford, rather than in the interest of the beneficiaries, and also in obtaining, through the joint motion of himself, Downing, and Kean, an order relieving Downing as well as himself of the duty to render a final accounting. Furthermore, in joining in a motion together with Downing and Kean to relieve Downing and himself of the duty to render a final accounting, Wharton and Downing were acting in their own interest, not in the interest of the beneficiaries. A trustee is required to administer the trust solely in the interest of the beneficiaries. LSA-R.S. 9:2082. Failure to do so is considered a breach of the duty of loyalty. See Comment (c) under LSA-R.S. 9:2082. The duty of loyalty is the fundamental duty owed by a trustee as a fiduciary. Because of that fact, an exculpatory “provision in the trust instrument is not effective to relieve the trustee from liability for breach of the duty of loyalty to a beneficiary ...”. LSA-R.S. 9:2206 B. As Wharton and Downing violated their duty of loyalty to the beneficiaries in moving to have Downing and himself relieved of the duty to render a final accounting, and as Downing administered the trust in the interest of Bradford, not that of the beneficiaries, Wharton must be surcharged for the consequences of his failure to obtain a final accounting, the loss to the trust resulting from his failure to obtain a redress of a breach of trust from Downing as predecessor trustee. LSA-R.S. 9:2204 (3). In addition, the order dispensing with the final accounting was ineffective because it was obtained ex parte. Furthermore, it *1219 appears to us that Downing committed a willful breach of trust in diverting trust funds to Bradford, and that Wharton committed a willful breach of trust for which he could not be dispensed from liability under the terms of the trust instrument in moving to have himself and Downing relieved of the duty to render a final accounting. Fundamentally, however, the loss to the trust resulting from Wharton’s failure to redress Downing’s breach of trust was the consequence of Wharton’s breach of the duty of loyalty to the beneficiaries, the fundamental fiduciary duty. See Bogert, Trusts and Trustees, (2d Ed.Revised), § 543.
The judgment of the trial court is amended to render judgment in favor of the appellants and against E. Briggs Wharton for the sum of two-thirds (%) of $71,674.31, or $47,782.88, and all costs, both in the trial court and on appeal, and, as amended, affirmed.
AMENDED AND AS AMENDED, AFFIRMED.
LeBLANC, J., concurs in part and dissents in part and assigns reasons.

. Baton Rouge Bank and Trust Company was appointed successor trustee to Wharton, and continues to hold that office.

. Wharton settled with Leigh Ann Bradford, and she is not a party to this proceeding.