538 So.2d 263 (1989)
In the Matter of DONALD E. BRADFORD TRUST.
No. 88-C-1014.
Supreme Court of Louisiana.
January 30, 1989.
Rehearings Denied March 2, 1989.
*264 Shannon Daigle, Paul Hurley, Anita M. Warner, Hurley & Hoffmann, New Orleans, Henry Salassi, Jr., Salassi & Clark, Baton Rouge, for applicant.
James Thomas, II, Wall, Thomas, Riche & Wall, Ashton Stewart, Stewart, Preis, Stewart & Stewart, Baton Rouge, for respondent.
CALOGERO, Justice.
The beneficiaries of the Donald E. Bradford trust initiated this action against E. Briggs Wharton, trustee, to force his resignation as trustee and to recover amounts lost to the trust through alleged breaches of his obligations as trustee. The breaches of trust complained of by the beneficiaries occurred both before and after Wharton became trustee.
The trial court ordered Wharton's resignation as trustee, but found that he was not liable to the trust for any breaches of the trust agreement.
The court of appeal effectively reversed the trial court, agreeing that Wharton must resign, but also holding that he must reconstitute the trust for amounts lost through breaches of the trust. 524 So.2d 1213 (La.App. 1st Cir.1987). The total amount for which the court of appeal found Wharton liable, $47,782.88, included amounts lost to the trust while Wharton's predecessor, Ben F. Downing, Jr., was trustee ($18,255.56) and losses that occurred after Wharton became trustee ($29,527.32). The court of appeal further ordered that Wharton is liable to the trust for legal interest on the foregoing amounts, compounded annually from the date of each loss.
The court of appeal's holding that Wharton is liable for losses incurred by the trust while his predecessor was trustee prompted our writ grant in this case. 526 So.2d 785 (La.1988). For the reasons set forth below, we find that the court of appeal erred in holding Wharton liable for losses that occurred before he became trustee. The principal amount of the judgment against Wharton should be reduced by the amount of those losses ($18,255.56).
In all other respects, we affirm the court of appeal's judgment, and hold that Wharton is liable to the trust for $29,527.32 (the amount of losses, as found by the court of appeal, which were incurred as the result of breaches of trust after Wharton became trustee), together with legal interest thereon from the date of each loss, compounded annually.

(I) FACTS
Donald Bradford established a trust in 1971 for the benefit of his three minor children, Mark Allen Bradford, Leigh Anne Bradford and Amy Crowell Bradford. At the time that this trust was established, Donald Bradford was married to Anne Crowell, the mother of the three beneficiaries.
At the outset of the trust, the trust corpus consisted of 40.7 shares of stock in Security Abstract Title Co. of Baton Rouge, Inc. This stock was donated to the trust by Bradford. The corpus of the trust was later supplemented by a $54,000 cash donation from Allen Crowell, the maternal grandfather of the beneficiaries. Between 1974 and 1978, Bradford used trust assets to purchase over 11,000 shares of stock in Lehman Corporation. The Lehman stock was purchased for the trust and held as a trust asset until its sale in 1982 (the sale of the Lehman stock will be discussed in further detail below).
In October, 1979, Bradford and Anne Crowell were divorced. Crowell was named tutrix of the children of the marriage, including the three children named as beneficiaries of the trust (one other child of the marriage, Beth Bradford, was born after the creation of the trust and is not a named beneficiary).
Ben R. Downing, Jr., a member of the same Baton Rouge law firm with which Bradford was associated, was named trustee of the Donald R. Bradford Trust at its inception in 1971. He served in that capacity *265 until Bradford left the employ of the law firm in 1981. At that time, E. Briggs Wharton, a longtime friend of Bradford and his family, agreed to succeed Downing as trustee.
On the joint petition of Downing, Wharton and R. Gordon Keane (the latter was named as the successor trustee to Downing in the trust agreement, but decided that he did not want to serve in that capacity), the district court signed an ex parte order on April 16, 1981 which approved Downing's resignation as trustee and appointed Wharton as his successor. This ex parte order also contained the following language:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Ben R. Downing, Jr. and E. Briggs Wharton, shall not be required to furnish any accounting in regard to the change of the Trustee, except as for such accountings as are required under the terms of the Trust instrument.
Wharton assumed the duties of trustee and held that position when the present controversy arose. This action was brought by and on behalf of two of the beneficiaries of the trust, Mark Allen Bradford, who has now reached the age of majority, and Amy Crowell Bradford, who is below the age of majority and whose claim is asserted by her mother and tutrix, Anne Crowell Wilson. The third beneficiary, Leigh Anne Bradford, has released Bradford from all claims covered by this litigation, has not asserted a claim against Wharton and is not a party herein.[1]
On September 13, 1988, after our writ grant in this case, Wharton filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Louisiana. The automatic stay issued in connection with that filing prohibited the further prosecution of any civil action against Wharton, including the present case. However, on October 6, 1988, the bankruptcy court entered an order lifting the stay "so as to permit the Courts of Louisiana, including, without limitation, the Supreme Court of Louisiana, to finally determine the issues in said cause, now pending before the Supreme Court of Louisiana, entitled Donald E. Bradford Trust, No. 88-C-1014...." This order lifts the automatic stay for the purposes of this case and specifically permits us to decide this case.

(II) LAW AND ANALYSIS
(A) Is the Trustee Liable for Acts of the Predecessor Trustee?
As chronicled in the court of appeal opinion, significant amounts of trust proceeds were diverted to Bradford's personal use while Downing was trustee. These diversions totalled $12,146.52. The facts surrounding these diversions are thoroughly recited in the court of appeal opinion, 524 So.2d at 1216-17, and we agree with the court of appeal's finding that these diversions were improper and should not have been permitted by Downing.[2]
The court of appeal also found that while Downing was trustee, he allowed the trust to purchase Bradford's interest in Inniswald Partnership, an entity in which Bradford had a personal investment. After the trust purchased Bradford's interest in Inniswald Partnership, the partnership paid *266 dividends on that interest totalling $15,236.83. These dividends were retained by Bradford for his personal use. The court of appeal reasoned that the $15,236.83 should have been paid to the trust rather than Bradford, since the trust, through payments made from 1975-1977, had purchased Bradford's Inniswald interest. 524 So.2d at 1216.
All told, the court of appeal found that, prior to the time Wharton became trustee, $27,383.35 was lost to the trust because of improper conduct on the part of Downing and Bradford ($12,146.52 by improper diversions of trust proceeds and $15,236.83 that the trust should have received from Inniswald.) The amount of liability which the court of appeal assessed against Wharton for these losses was $18,255.56 ($27,383.35 minus a one-third credit because Leigh Bradford's settlement; see supra note one.)
The Louisiana Trust Code provides that, under certain limited circumstances, a trustee may be liable for breach of trust committed by a predecessor trustee. La.R. S. 9:2204 provides that:
A trustee shall not be liable to a beneficiary for a breach of trust committed by a predecessor trustee, unless he:
(1) Knows or should know of a situation constituting a breach of trust committed by his predecessor and improperly permits it to continue; or
(2) Neglects to take proper steps to compel the predecessor to deliver the trust property to him; or
(3) Neglects to take proper steps to redress a breach of trust committed by the predecessor.
The beneficiaries argue that when Wharton became trustee, Downing was required by La.R.S. 9:2088(C) to render an accounting of trust assets to Wharton.[3] Downing did not render any such accounting. The beneficiaries further argue that Wharton violated his duty as trustee by failing to require Downing to render a final account of trust assets. They contend that if Wharton had required such an accounting, he would have discovered the aforementioned losses to the trust that resulted from the improper conduct of Downing and Bradford, and he could have forced Downing and/or Bradford to reconstitute the trust for the amounts lost. Therefore, the beneficiaries argue, Wharton "should have known" of the breaches of trust committed before he became trustee, and should have taken proper steps to compel his predecessor to return the trust assets involved. Because Wharton did not do so, the beneficiaries urge that he is liable under La.R.S. 9:2204 for the losses caused by his predecessor trustee.
Wharton's counterargument is that he was relieved by the terms of the April 16, 1981 ex parte order from any duty he otherwise had to require a final accounting from his predecessor. That order specified that Downing and Wharton were not required "to furnish any accounting in regard to the change of the Trustee, except for such accountings as are required under the terms of the Trust instrument." The trust instrument, Wharton argues, required annual accountings by the trustee but did not require a special accounting by the outgoing trustee when a new trustee was appointed.[4]
The court of appeal found that Wharton should have required Downing to file a final account, and that the ex parte order did not relieve Wharton of the responsibility for making such a demand. The appellate court reasoned that the order was of "no effect" because it was entered without notice to the beneficiaries, who should have *267 been given the opportunity in an adversary hearing to oppose the joint motion to waive a final accounting. 524 So.2d at 1215. The court of appeal further concluded that because Wharton did not require such an accounting, he is liable for the earlier breaches of trust.
We are inclined to agree with the court of appeal's conclusion that the district court should not have relieved Downing of his duty to render a final account pursuant to La.R.S. 9:2088(C) without first giving the beneficiaries notice and an opportunity to be heard on the issue. La.R.S. 9:2065 permits a court to relieve a trustee "for cause shown" from "duties and restrictions that otherwise would be placed upon him" by the Trust Code. Downing thus should have been required to "show cause" for obtaining a waiver of the final accounting requirement contained in La.R.S. 9:2088(C), and the "cause shown" requirement implies the need for an adversarial hearing after notice to all interested parties. The ex parte order, then, was probably without preclusive effect as to the beneficiaries, who did not receive prior notice of the motion.
The issue before us, however, is not whether the beneficiaries could have nullified the ex parte order on grounds of insufficient notice. The issue is whether Wharton's reliance on that order as justification for not requiring a final account from his predecessor can subject him to liability for his predecessor's misdeeds.
Section 6.5 of the trust agreement provides that the trustee shall not be liable "by reason of any loss, injury or destruction... to the property in any of the trust... by or through the action of the Trustee," except for losses caused by the trustee's "willful fault or gross negligence." La.R.S. 9:2206(B) recognizes the validity of such an exculpatory clause, as it provides that the trust agreement may relieve the trustee from all liability except for losses caused "by the breach of the duty of loyalty to a beneficiary or breach of trust committed in bad faith." When the foregoing provisions of the Trust Code and the trust instrument are considered together, it is apparent that Wharton could only be liable for losses resulting from his (1) gross negligence; (2) willful fault (bad faith) or (3) breach of duty of loyalty to a fiduciary.
Given the existence of a judicial order relieving Downing of the duty to file a final account, Wharton's failure to disregard the order and demand an accounting did not constitute gross negligence, willful misconduct or a breach of any duty to the fiduciaries. Wharton, who is not a lawyer, had no reason to know that the order might have been deficient. While we have concluded, based on an inference drawn from the wording of La.R.S. 9:2065, that such an order probably should not have been signed without notice and a hearing, there is no explicit provision to that effect in the trust code. It is not likely that any other reason was apparent to Wharton such that he should have questioned the validity of the order. Consequently, it was not unreasonable for him to rely on the order, and his failure to require an accounting from his predecessor did not constitute gross negligence, willful fault or breach of the duty of loyalty. He is thus not liable for losses that occurred while his predecessor was trustee. We will therefore reverse the court of appeal's judgment insofar as it held Wharton liable for $18,273.56 in losses sustained by the trust while Downing was trustee.
(B) Breaches of the Trust Agreement After Wharton Became Trustee
Bradford's pattern of diverting trust funds for his personal use (or, at least, for uses not authorized by the trust instrument) continued after Wharton became trustee. The court of appeal opinion describes three such diversions, totalling $4,212.50 ($405.00 for football tickets and $3,807.50 for vacation expenses) 524 So.2d at 1217. These diversions could not have occurred unless Wharton, as trustee, had permitted Bradford to use the funds. We agree with the court of appeal's implicit holding that it was gross negligence on Wharton's part to allow Bradford to expend trust funds in this fashion. Wharton must reconstitute the trust in the sum of *268 $2,808.34 (two-thirds of $4,212.50) for these losses.
A separate and more substantial matter involves the Lehman Corporation stock. As noted above, Bradford used trust assets to purchase Lehman stock for the trust between 1974 and 1978. In the Fall of 1982, after Wharton had become trustee, Bradford began selling off the Lehman stock in large blocs. Through numerous transactions, some 11,479 shares of Lehman stock were sold for $142,248.80, but only about $33,000 of those proceeds were reinvested in trust assets. Remaining proceeds, totalling in excess of $100,000.00, were "loaned" to Bradford by the trust, with Wharton's consent. Wharton received no security from Bradford for these funds. The only documents which evidenced that the trust had loaned Bradford over $100,000.00 from the proceeds of the Lehman stock sales were non-interest bearing promissory notes executed by Bradford in favor of the trust (the largest note being in the amount of $95,596.73).
Only after the institution of these proceedings did Bradford repay the trust the money which he owed for the proceeds of the Lehman stock sales ($95,596.73 was repaid in January, 1985, and an additional $6,803.71 was repaid in September, 1985). Bradford has also reimbursed the trust $20,801.21 for interest on the amount borrowed, apparently calculated at the rate of seven per cent per annum from the date of the loan until repayment.
Wharton denies that he committed a breach of trust by allowing Bradford to retain the proceeds of the Lehman stock sale. He further argues that even if a breach was committed, it has been rectified by virtue of Bradford's repayment of the principal borrowed plus seven per cent annual interest.
We disagree. There was a serious breach of trust and it has hardly been rectified. With respect to the breach of trust, the record reflects that the bulk of the Lehman stock sales (8,079 out of 11,479 shares) were not made for the benefit of the trust, but for the sole benefit of Bradford. For three years, the trust was deprived of the use of over $100,000.00 in cash, which was repaid only after the institution of this suit. By permitting this substantial sum to leave the trust, to be used by the settlor for his own purposes through the mechanism of interest-free loans, Wharton was grossly negligent.
With the respect to the loss suffered by the trust as a result of this breach, the record establishes that after the Lehman stock was sold, Lehman paid substantial dividends to its shareholders. Had the 8,079 shares of stock (which were sold to provide an interest-free loan to Bradford) still been in the trust, the trust would have received dividends on those shares totalling $61,879.67.
The court of appeal accordingly found that Wharton must reconstitute the trust for lost dividends totalling $26,718.98, an amount representing two-thirds the total of lost dividends ($61,879.67) after a credit for the $20,801.21 interest payment made by Bradford. This award for the lost dividends was proper under La.R.S. 9:2201(3). That statute provides that a trustee who commits a breach of trust shall be chargeable with "profit that would have accrued to the trust estate if there had been no breach of trust." As sufficient evidence was presented at trial on the amount of dividends which the trust would have received if not for the improper sale of the 8,079 shares of Lehman stock (see Trial Exhibit Wilson 3), we find no reason to disturb the court of appeal's award for this element of damages.
Wharton argues that a trustee should have discretion in the sale and investment of trust proceeds, and cannot be liable "after the fact" if an investment decision turns out to be less profitable than some other possible use of trust proceeds. That of course is true. La.R.S. 9:2202 provides that a trustee "is not liable to a beneficiary for a loss or depreciation in value of the trust property, or for the failure to make a profit not resulting from a breach of trust." (emphasis added) A trustee cannot be held liable based on judicial second-guessing regarding the wisdom of good *269 faith investments otherwise permitted by the Trust Code or the trust instrument.
But in this case, the basis for imposing liability on the trustee for lost dividends is not that the trustee made an unwise investment. To the contrary, the trustee made no investment with the bulk of the proceeds of the Lehman stock. Instead of reinvesting the proceeds for the purpose of benefiting the trust, the trustee simply handed the money over to the settlor (with the exception of $33,000 used to buy stock for the trust in a different corporation), receiving nothing in exchange but interest free promissory notes. This was a clear breach of the trustee's duty to the beneficiaries which warrants the liability imposed for lost dividends by the court of appeal.
Nor was the breach of trust rectified by the settlor's belated decision to pay interest on some (though perhaps not all)[5] of the diverted stock proceeds at the arbitrarily-selected seven per cent annual rate. The court of appeal properly determined the measure of the loss by subtracting Bradford's interest payment from the amount of profit that would have inured to the trust if the breach had not occurred.
(C) Interest
The court of appeal concluded that Wharton must pay the beneficiaries interest on the amounts due "from the date of the diversion of each portion of the trust assets," to be calculated at the applicable rate of legal interest. 524 So.2d at 1221.
We find no error in the court of appeal's decision to apply the legal rate of interest. In the absence of a contract which specifically provides for the rate of interest applicable to the loss in question, the court may require the trustee to pay the legal rate of interest as compensation for the beneficiary's loss of use of the trust proceeds. Bogert, Trusts and Trustees (2d ed. rev. 1982) § 863. Here there is no provision in the trust instrument which designated an applicable rate of interest for funds owed to the trust. Thus we find no error in the court of appeal's decision to apply the legal rate of interest under these circumstances.
The court of appeal also ordered that the interest due should be compounded annually. Wharton argues that the award of compound interest is essentially intended as a penalty, and that punitive damages are not authorized by law in this situation.
An award of compound interest does not serve as a penalty in this case, but instead serves as a means for allowing the trust to be compensated for the interest or other profit that it would have made on the diverted or lost funds through investments had there been no diversions or losses. As noted by the court of appeal, an award of compound interest is proper under La.R.S. 9:2201(3), which provides that the trustee shall be liable for profits which would have accrued if there had been no breach of trust. We therefore affirm the court of appeal's award of compound interest.
As noted by the court of appeal, interest should be calculated on each diverted sum that forms a portion of the total judgment against Wharton from the date of the particular diversion involved. With respect to the lost dividends, interest should be calculated from the date each dividend was payable (as shown on trial exhibit Wilson 3).

Decree
The court of appeal's judgment is reversed insofar as it holds Wharton liable for breaches of the trust agreement which occurred before he became trustee. The court of appeal's judgment is affirmed in all other respects. The court of appeal's judgment against Wharton is accordingly reduced from $47,782.88 to $29,527.32, together with legal interest thereon to be calculated from the date of each loss as explained above, compounded annually, and all costs of this proceeding.
*270 AFFIRMED IN PART; REVERSED IN PART; RENDERED.
NOTES
[1] Because Leigh Anne Bradford did not assert a claim against Wharton, the court of appeal limited Wharton's maximum liability in this case to two-thirds of all established losses, a one-third credit being allowed since one of the three beneficiaries is not asserting any claim. Therefore, the court of appeal's total assessment of Wharton's liability, $47,782.88, represents two-thirds of the total amount of damages ($71,674.31) which the court of appeal concluded had actually been incurred by the trust.
[2] The improper diversions of trust proceeds which occurred while Downing was trustee, totalling $12,146.52, consisted of: (1) $1,000 paid to Gully & Associates for immovable property, a purchase not made for the benefit of the beneficiaries; (2) $2,100 paid to an investment firm to purchase stock for Beth Bradford, who is not a beneficiary of the trust; (3) a $6,000 unsecured loan to Bradford's brother and (4) $2,946.52 used by Bradford for various expenses incurred in support of his children, including non-beneficiary Beth Bradford, in violation of a provision of the trust instrument which forbade the use of trust funds to fulfill Bradford's duty to support his children.
[3] La.R.S. 9:2088(C) provides that:

"A trustee upon the termination, revocation, or recission of the trust, or upon his resignation or removal, shall render to a beneficiary or his legal representative his final account covering the period elapsed since his most recent annual account ... and setting forth the same information required for annual accounts."
[4] Section 6.1 of the Trust Instrument reads as follows:

"Each year the Trustee shall render an account of the administration of the trust to the beneficiaries of the trust in accordance with the provisions of Section 2088 of the Louisiana Trust Code, as it may hereafter be amended."
[5] We are uncertain from the record whether Bradford repaid all of the stock proceeds which he borrowed or diverted from the trust, and it appears that he may not have paid interest on all of those proceeds. However, the beneficiaries did not seek an increase in the court of appeal's award, so we simply affirm the amount awarded by the court of appeal as regards the Lehman stock transactions.