J^FITZSIMMONS, J.
Commercial Union Insurance Company appeals from a trial court decision in favor of plaintiffs, in which fault was assessed to defendant/appellant. Damages in the sum of $300,000.00 were awarded to the parents of Sop Panyanouvong for their son’s shooting death. We reverse the lower court determination after finding an error of law.
*11 FACTS
On October 3, 1993, Chris Nguyen and Sop Panyanouvong (Sop) were murdered during a robbery at the T & H Convenience Store (T & H).[2] Stephanie Nguyen, the co-owner of the store with her husband, Chris Nguyen, was taken upstairs where she was gagged and bound. The assailants stole approximately $30,-000.00 in cash from the second floor. Nhok Panyanouvong and Khamhou Siripa-nyo, the parents of Sop, filed a petition alleging damages for their son’s death as well as his alleged pain and suffering prior to his death. The trial proceedings were held on April 8-12,1997.
The jury found that T & H was legally at fault in causing Sop’s death. In response to one of the questions on the jury verdict form, the jury answered that the fault of the unknown murderers was not a legal cause of the damages sustained by the plaintiffs. In the subsequent jury verdict question, the jury responded that the unknown murderers were to be assigned 25% of the fault.[3] The jury awarded $150,000.00 to Sop’s mother and $158,-000.00 to his father. Noting an inconsistent verdict, the trial court reallocated the assessment of fault, attributing 100% fault to T & H.
T & H filed a motion for new trial, or alternatively, motion for judgment notwithstanding the verdict. It alleged that the jury’s apportionment of the non-causative fault was inconsistent with the verdict. The court denied both motions. T & H appeals to this court, assigning as error the following:
1) The trial court committed legal error in failing to require the jury to return to deliberations to cure the defect in the jury verdict form, or alternatively to grant defendants’ motion for new trial.
2) The trial court committed prejudicial error in denying the defendants’ motions in limine to exclude testimony regarding Chris Nguyen’s use of marijuana.
3)The trial court committed prejudicial error in denying defendants’ motions in limine to exclude testimony that Chris Nguyen gambled on sporting events prior to the murders.
|34) The trial court committed legal error by including a jury instruction regarding T & H Convenience Store, Inc.’s alleged assumption of duty under Mundy vs. Department of Health & Human Resources, 620 So.2d 811 (La.1993).
5) The trial court committed legal error in finding Sop Panyanouvong was not in the course and scope of his employment for T & H Convenience Store, Inc. at the time of the shootings.
6) The trial court committed legal error in finding as a matter of law that T & H Convenience Store, Inc. owed a duty to protect Sop Panyanouvong from the attack.
7) The trial court committed legal error in finding negligence on the part of T & H Convenience Store which was a legal cause of Sop Panyanouvong’s death.
8) The trial court committed legal error in finding that Commercial Union provided coverage for the claims of the plaintiffs.
INCONSISTENT VERDICT
Legal error exists upon the application of incorrect principles of law that deprives a party of substantial rights. Evans v. Lungrin, 97-0541, 97-0577, p. 7 (La.2/6/98); 708 So.2d 731, 735. When legal error has restricted or interdicted the fact-finding process, the law carves out an exception to the appellate “manifest error” or “clearly wrong” standard of review of a trial court or jury’s finding of fact. Evans, 708 So.2d at 735.
*12 In instances involving the allocation of fault pursuant to a special jury verdict form, La. C.C.P. art. 1812 requires that the jury determine “[t]he degree of such fault, expressed in percentage .” The court is required to “enter judgment in conformity with the jury’s answers to [the] special questions and according to the applicable law.” La. C.C.P. art. 812(D). However, La. C.C.P. art. 1813(E) states:
When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, the court shall not direct the entry of judgment but may return the jury for further consideration of its answers or may order a new trial.
The trial court in the instant matter recognized an inconsistency in the responses; however, the court unilaterally reallocated 100% fault to T & H, rather than “return[ing] the jury for further consideration of its answers or ordering] a new trial.” This action constitutes legal error because the jury process was tainted to the prejudice of T & H.
In circumstances involving the existence of prejudicial legal errors at the trial level, if an otherwise intact record exists, the appellate court is required to review the record de novo and determine the essential facts pursuant to the correct law by a preponderance of the evidence. Evans, 708 So.2d at 735; Ferrell v. Fireman’s Fund Insurance Co., 94-1252, p. 7 (La|2/20/95);₄ 650 So.2d 742, 747. We, therefore, proceed to review the merits of the case before us.
FAULT
The robbery in the case sub judice involved a highly organized hit by four men carrying well-equipped backpacks. The perpetrators rushed into the store shortly before the 10:00 p.m. closing time, locking the door behind them as they entered. One assailant struck Chris Nguyen, and Stephanie Nguyen was grabbed and separated from her husband, who was near the cash register. Bypassing the open cash register, Mrs. Nguyen was physically forced upstairs where the Nguyens lived. She was then bound with gray duct tape and ordered to divulge the location of money. Chris Nguyen and Sop, who was also on the first floor (in the kitchen/storeroom area), were shot and killed. The murderers cut the electricity to the breaker box in the storeroom; this action incapacitated the alarm system. The assailants left with the following items: approximately $30,-000.00 in cash, which they had obtained from under a mattress and an upstairs safe; a semi-automatic gun; two camcorders; a VCR; and a VCR tape that would have revealed their identities. The entire operation transpired in approximately 5 minutes.
In Louisiana, a business establishment’s liability for damages to an invitee by a third party criminal is predicated on a duty/risk analysis. Gardner v. Griffin, 97-379, p. 7 (La.App. 1st Cir.4/8/98); 712 So.2d 583, 588. To prevail under a duty-risk analysis, the plaintiff must prove: 1) the defendant owed a duty of care to the plaintiff; 2) the defendant breached the duty; 3) the breach was a cause in fact of the harm; and 4) the risk and harm encountered by the plaintiff falls within the scope of the protection afforded by the duty breached. Id.
The existence vel non of a duty is a question of law. Mundy v. Department of Health and Human Resources, 620 So.2d 811, 813 (La.1993). Generally, there is no duty to protect oth ers from the criminal behavior of third persons. Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364, 1371 (La.1984). The standard of protection to be afforded to public invitees by businesses is limited to those “reasonably necessary acts to guard against the predictable risk of assaults.” Hams, 455 So.2d at 1369 (citing Banks v. Hyatt Corporation, 722 F.2d 214, 227 (5th Cir. 1984)). A business that has particular knowledge of a prospective crime is charged with a duty *13 to protect. Additionally, a duty to protect exists when a pattern of conduct renders the criminal conduct at issue foreseeable. Green v. Infinity International, Inc., 95-2356, p. 3 (La.App. 1st Cir.6/28/96); 676 So.2d 234, 236. The duty of a business owner does not, however, lsencompass unforeseeable or unanticipated criminal acts by third party perpetrators. Liability can be imposed only in those situations in which the owner knew, or should have known, of the potential danger caused by the criminal activity at issue. Id. (citing Sutter v. Audubon Park Commission, 533 So.2d 1226, 1231 (La.App. 4th Cir.1988), writ denied, 538 So.2d 597 (La.1989)). Thus, prior criminal activity is one determinant in establishing the element of foreseeability. Green, 676 So.2d at 236.
Applying these tenets to facts of this appeal, uncontradicted evidence demonstrates that the Nguyens equipped the premises with the following security devices: a superior alarm system consisting of a regular burglar alarm at night and a second hold-up alarm (panic button); three safes, including one drop safe which could not be opened for certain periods of time; a time-lapse VCR that recorded segments of activity on the main floor; a monitor on the second floor that was directly hooked to a line connected to the downstairs camera; good interior lighting; a one-way window overlooking the first floor from the second floor; and guns on the premises. The expert testimony substantiated that the Nguyens had superior security measures compared to any other businesses in the surrounding area.
The thrust of the plaintiffs’ argument for the imposition of a duty on the business owners against the crime at issue is centered around the fact that the Nguyens possessed approximately $30,000 in cash in the upstairs area. It is contended that the general public was aware that members of the Asian culture reputedly kept then-money on the premises, rather than depositing funds in a bank or other monetary institution. A professional criminologist testifying on behalf of the plaintiffs stated that the custom of keeping money on one’s property increases the probability that somebody will commit a robbery. The testimony by various experts consistently classified the assault as being well-planned and professionally executed to the extent that it did possess the characteristics of a local robbery.
Ike Vavasseur, a police officer, detective and investigator in the homicide robbery division of the Baton Rouge Police Department, stated that there was no significant history of criminal activity at the store. Detective Michael W. Morris, who was employed in the homicide/robbery division of the Baton Rouge Police Department since 1985, stated that he had not seen this type of robbery in the area before, or since, Sop’s murder. It was, additionally, opined by an expert in the field of security, and convenience store security, that the [^sophistication of the crime prevented reasonable security measures from providing adequate protection against this type of incident once the perpetrators had targeted the premises for attack.
There was testimony by a former employee and the owner of the building that drugs had been used on the premises and gambling was prevalent; however, the records of the police department failed to reveal any history of drug use, drug selling or gambling. There was, moreover, no evidence of drug paraphernalia or drugs on the scene immediately following the murders.
With regard to the existence of large quantities of cash on the premises, the evidence does not support the proposition that the general public had any particular knowledge that a vast amount of money was stored on the second floor in the living quarters of the Nguyens. Testimony of specific knowledge was limited to the land *14 lord[4] and a former employee, who were privy to the business procedures and habits of the Nguyens. The fact that there might be a perception by criminals that members of the Asian culture often keep large amounts of their- savings in their home fails to establish the elements indicative of foreseeable or anticipated criminal acts, absent additional characteristics suggestive of prospective criminal activity in the situation at hand. Mrs. Nguyen stated that the cash was on hand at that particular time because the Nguyens were in the process of buying property.
Although it was conceded by the criminal experts that the act of routinely maintaining large quantities of cash on one’s premises is not advisable, the evidence in this case does not support the proposition that the attack was perpetrated by persons who possessed a general knowledge that large quantities of money were stored on the premises based upon public perception in the area. The attackers’ inside knowledge of the premises, including the storeroom and electrical equipment, exceeded the general knowledge that might have prevailed in a neighborhood. Moreover, the characterization of the procedures employed in the robbery/murder at issue were not similar to any other attacks that had occurred in the area before or after the incident. The experts and enforcement officers opined that in addition to being more sophisticated than the typical local hit, it appeared to have been committed with insider knowledge. The unique characteristics of the incident under review thus remove it from a foreseeable or anticipated criminal act against which the patron owners had a duty to protect its pinvitees. The plaintiffs failed to demonstrate by a preponderance of the evidence that the Nguyens did not have reasonable preventive measures against criminal acts that might be anticipated, given the particular circumstances of this case.
Accordingly, after a thorough review of the evidence, this court finds that the Ngu-yens did not owe a duty to protect Sop against this third party criminal act. The decision reached by the jury and the trial court is hereby reversed; the Nguyens are absolved from any liability.[5]
REVERSED AND RENDERED.

\/Jn Application for Rehearing

REHEARING DENIED.
The request for rehearing is denied. Moreover, we observe that this case warrants a reversal on the additional basis of manifest error in the jury’s allocation of fault.
Under the circumstances outlined at trial and delineated in this panel’s decision, T&H Convenience Store, Inc. employed reasonably necessary precautionary protection against a predictable risk of assaults. It breached no duty to protect this victim against the unforeseeable or unanticipated intentional criminal acts by third party perpetrators. See and compare Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364, 1371-1372 (La.1984). Accordingly, the jury verdict was clearly wrong.

. T & H was leased from Glen Alan Cham-blee.

. No fault was attributed to Sop.

. Mr. Chamblee gave conflicting testimony regarding his knowledge of the retention of vast quantities of cash on the premises.

. The decision reached by this court preter-mits the remaining issues on appeal.