# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2018 CA 1484

### JONATHAN SCOTT CHOUEST

### VERSUS

### KIRT CHOUEST AND KELLIE CHOUEST DUET

**Judgment Rendered:** DEC 1 9 2019

* * * * * *

On Appeal from the Seventeenth Judicial District Court
In and for the Parish of Lafourche
State of Louisiana
Docket No. 126902

Honorable Christopher J. Boudreaux, Judge Presiding

* * * * * *

W. Patrick Klotz
New Orleans, Louisiana

Counsel for Plaintiff/Appellant
Jonathan S. Chouest

Jerald P. Block
Kendall J. Krielow
Sarah M. Lambert
Thibodaux, Louisiana

Counsel for Defendants/Appellees
Kirt Chouest and Kellie Chouest Duet

* * * * * *

**BEFORE: WHIPPLE, C.J., McCLENDON, AND HIGGINBOTHAM, JJ.**

Higginbotham, J. concurs.

**McCLENDON, J.**

Plaintiff, sole beneficiary of the Jonathan Chouest Trust, filed this suit against Defendants, former co-trustees of the Jonathan Chouest Trust, for breach of fiduciary duty. Plaintiff now appeals the judgment wherein the trial court ordered Defendants to pay damages to Plaintiff for certain breaches, but failed to order Defendants to pay damages to Plaintiff for all alleged breaches. Defendants answered the appeal, arguing that the trial court committed legal error by awarding legal interest on the awarded damages prior to the date of judicial demand. For the reasons that follow, we affirm the trial court's judgment awarding damages and legal interest, amend the judgment to make additional awards in favor of Plaintiff, affirm as amended, and deny the answer to appeal.

## FACTUAL AND PROCEDURAL HISTORY

The Jonathan Chouest Trust ("Trust") was formed by an Act of Trust executed on December 4, 1995. The settlors of the Trust were Dolores G. Chouest and Edison S. Chouest, Sr. ("Settlors"). Settlors named their then nine-year-old grandson, Jonathan Chouest, the sole beneficiary. Settlors named Jonathan's older half-siblings, Kirt Chouest and Kellie Chouest Duet, as Trustees (sometimes collectively, "Defendants"). Kirt Chouest and Kellie Chouest executed the Act of Trust as Trustees. [1]

Jonathan's parents, Edison "Eddie" Chouest, Jr. and Margaret "Margo" Chouest, had separated prior to the formation of the Trust and subsequently divorced. In connection with their divorce, Eddie and Margo executed a consent judgment that required that Eddie pay Jonathan's school expenses and maintain certain New York Life Insurance policies for Jonathan's benefit. In January of 1996, Kirt and Kellie each purchased one-half of Eddie's shares in Edison Chouest Offshore.[2]

The Trust's initial asset was $78,854.48, comprised of funds Settlors had previously gifted to Jonathan as Christmas gifts for the years 1988-1994. Settlors had originally gifted the funds as certificates of deposit, but transferred the funds into a

---

[1] We refer to the parties by their first names throughout to avoid any confusion caused by multiple parties and witnesses sharing the same last name.

[2] Based on testimony presented at trial, it appears that Kirt and Kellie each paid in excess of two million dollars for their one-half of Eddie's shares in Edison Chouest Offshore.

2

checking account held by the Trust upon creation of the Trust. In the years 2002, 2003, 2004, and 2005, Settlors gave Jonathan Christmas gifts in the amount of $2,000.00 each year. These Christmas gifts were also deposited into the Trust checking account. Additionally, each Settlor bequeathed $100,000.00 to Jonathan in their testament. Following Edison Chouest, Sr.'s death on October 1, 2008, $100,000.00 was deposited into the Trust from his succession. Following Dolores's death on April 30, 2014, only $32,950.50 was deposited into the Trust from her succession.

In January of 2014, Kirt consulted with Leon Rittenberg, an attorney at the law firm Kirt believed had originally drafted the Trust, regarding a possible early dissolution of the Trust and distribution of assets. Mr. Rittenberg informed Kirt that the terms of the Trust directed that Jonathan receive one-third of the Trust's funds on his twenty-fifth birthday, which was March 29, 2011, but Kirt and Kellie had failed to make the payment. At Kirt's request, Mr. Rittenberg then contacted Jonathan regarding the delinquent payment. On January 23, 2014, Jonathan received $35,137.07, which was one-third of the Trust's funds at that time. Following and incited by this belated payment, Jonathan requested an accounting of the Trust on July 24, 2014, through his counsel. However, the "accounting" provided did not contain any tax returns prior to the year 2004 and did not contain any bank statements prior to the year 2009. Mr. Rittenberg advised Jonathan's counsel by letter dated August 18, 2014, that "[r]ecords pertaining to older years no longer exist."

On December 3, 2014, Jonathan contacted Kirt by email to ask whether Kirt and Kellie would agree to Jonathan receiving additional Trust funds to use as a down payment on a home. Kirt replied that he and Kellie would be happy to help and asked for documentation. Jonathan replied with financing information. In response, Kirt requested more details regarding the financing. He also wrote:

> Also, we will need a release, signed by you, protecting Kellie and me from any liability since we will be releasing funds early from the trust, rather than in accordance with the schedule written into the trust.

Kirt ultimately refused to accept the release Jonathan proposed, which would have been limited to the transaction in question. In a December 16, 2014 email, Kirt wrote that "the language in your email is much too narrow and limited... In order for us

to proceed, we need a more comprehensive release." Jonathan refused to sign the indemnity agreement proposed by Kirt.

Jonathan subsequently filed suit against Kirt and Kellie on February 27, 2015, alleging numerous breaches of the Trust. The alleged breaches of the Trust included: failure to keep and provide a clear and accurate annual accounting of the Trust; failure to deal fairly and communicate all material facts; loaning of Trust funds to trustees and/or family members; sale of Trust property to trustees, personally; failure to allow Jonathan as beneficiary to inspect the Trust property; failure to prudently administer and invest the Trust funds, despite having specialized knowledge in accounting and finance; failure to control and preserve the Trust property for Jonathan's benefit as beneficiary; and, failure to separate Trust property. Kirt and Kellie answered Jonathan's petition, denying that any act or omission on their part caused damage or loss to Jonathan. Kirt and Kellie also asserted that Jonathan was responsible for and failed to mitigate any damages or loss he may have suffered.

By the end of 2015, the Trust was terminated with the consent of Kirt, Kellie, and Jonathan. Jonathan received the $99,705.45 balance of the Trust. Litigation continued for several more years.

A three-day bench trial was held on March 7, March 8, and March 26, 2018. At trial, Jonathan argued that Kirt and Kellie had failed to keep Trust records, including but not limited to bank account statements, loan documents, and receipts; that Kirt and Kellie had instead withheld, discarded, or destroyed Trust information; and, that Kirt and Kellie had failed to prudently invest and administer Trust funds, instead causing the Trust to lose value by maintaining the funds in a low-interest checking account that charged more in monthly fees than the Trust funds earned in interest, despite being sophisticated with respect to financial investments. Jonathan further argued that Kirt and Kellie had disbursed Trust funds for improper purposes, including payment of expenses that his father, rather than the Trust, was required to pay pursuant to the child support provisions of the consent judgment Eddie and Margo executed in connection with their divorce. Among the expenses that Jonathan alleged should have been paid by Eddie were Jonathan's educational expenses and the costs of maintaining

4

a New York Life Insurance policy naming Eddie as the insured and Jonathan as the beneficiary ("New York Life policy"). Jonathan additionally alleged that Kirt and Kellie had made and repaid loans to themselves and Eddie with funds from the Trust, including payment of loans and interest on loans taken against the New York Life policy, and had failed to document these loans. Jonathan also sought to prove that Settlors had continued to make annual Christmas gifts that Kirt and Kellie had failed to deposit into the Trust account, and that Kirt and Kellie improperly withheld a portion of the $100,000.00 bequest to Jonathan set forth in Dolores's testament.

The trial court found that Kirt and Kellie had breached the Trust by failing to properly account. The trial court additionally found that payments made on loans taken against the New York Life policy, payments of interest on loans taken against the New York Life policy, and a payment labeled "ECO/pay back dad" were improper. Thus, the trial court ordered Kirt and Kellie to reimburse Jonathan for these disbursements, and to pay the legal interest rate in effect from the date of each improper disbursement to the date suit was filed, plus judicial interest from the date of judicial demand until paid. The trial court declined to find that Kirt and Kellie had breached the Trust by maintaining the Trust funds in a low-interest checking account, by disbursing Trust funds to pay Jonathan's educational expenses, or by disbursing Trust funds to pay premiums for the New York Life policy. With respect to Jonathan's allegations that Kirt and Kellie had failed to deposit Christmas gifts and the full $100,000.00 bequest from Dolores, the trial court determined that Jonathan had failed to prove that additional Christmas gifts were made or that the amount withheld from the $100,000.00 was not properly owed as estate taxes as Kirt and Kellie contended. Kirt and Kellie were cast with court costs.

Kirt and Kellie filed a Motion for New Trial on April 13, 2018. The trial court denied the Motion for New Trial in an order dated July 5, 2018. Jonathan appealed, asserting the following assignments of error:

1. The trial court erred in finding that Appellees' only breach of the Trust was their failure to account.

2. The trial court erred in failing to properly award damages in accordance with LSA-R.S. 9:2201.

Kirt and Kellie answered the appeal, arguing that the award of legal interest was not allowed by law, and that the award improperly expanded Jonathan's pleadings because Jonathan had not prayed for legal interest. Kirt and Kellie prayed that this Court revise the trial court's judgment to include only the amount of actual damages, exclusive of legal interest prior to the date of judicial demand, and affirm the judgment as amended.

## LAW AND ARGUMENTS

A trust is the relationship resulting from the transfer of title to property to a person to be administered by him as a fiduciary for the benefit of another. LSA-R.S. 9:1731.[3] Several provisions in the Trust Code indicate the high standard to which a trustee is held. **Succession of Dunham**, 408 So.2d 888, 900 (La. 1981). Louisiana Revised Statute 9:2082 mandates that a trustee administer the trust solely in the interest of the beneficiary, and 1964 Comment (c) to LSA-R.S. 9:2082 provides that the fundamental duty that a trustee owes a beneficiary is the duty of loyalty. Louisiana Revised Statute 9:2090 provides that a trustee shall administer the trust as a prudent person would administer it, exercising reasonable care and skill, and considering the purposes, terms, distribution requirements, and other circumstances of the trust. Louisiana Revised Statute 9:2091 imposes upon a trustee the duty to a beneficiary to take reasonable steps to take, keep control of, and preserve trust property. These provisions of the Trust Code evince the intention by the Legislature to place the very highest possible fiduciary responsibility on the trustee towards the beneficiaries. **Dunham**, 408 So.2d at 901. The Louisiana Supreme Court in **Dunham** wrote:

> ... the statutory provisions relative to the responsibilities of a trustee are very rigid and hold the trustee to an even higher fiduciary responsibility to his beneficiary than that owed by a succession representative to heirs. The very word "trustee" implies the strongest obligation on the part of the trustee to be chaste in all dealings with the beneficiary.

408 So.2d at 900.

---

[3] The nature and extent of the duties and powers of a trustee are determined from the provisions of the trust instrument, except as otherwise expressly provided in the Louisiana Trust Code, and, in the absence of any provisions of the trust instrument, by the provisions of the Trust Code and by law. LSA-R.S. 9:2061.

A violation by a trustee of a duty he owes to a beneficiary as trustee is a breach of trust. LSA-R.S. 9:2081. If a trustee commits a breach of trust he shall be chargeable with a loss or depreciation in value of the trust estate resulting from a breach of trust, or a profit made by him through breach of trust, or a profit that would have accrued to the trust estate if there had been no breach of trust. LSA-R.S. 9:2201. Determining whether a trustee has complied with these obligations requires a review of the trustee's actions in the performance of the duties incumbent on him or her as trustee. **In re Harrier Tr.**, 2018-0324 (La. App. 3 Cir. 1/30/19), 264 So.3d 526, 535, writ denied, 2019-0582 (La. 6/3/19), 272 So. 3d 544.

Jonathan's first assignment of error is that the trial court erroneously concluded that Kirt and Kellie's only breach of the Trust was their failure to account. Jonathan contends that the trial court arrived at this conclusion after applying the wrong legal standard when determining whether Kirt and Kellie breached the Trust. Jonathan focuses on the following statement from the trial court's oral reasons for judgment:

> The next question is do I find that in this case there was a breach by the defendants? In other words, do I find that they acted dishonestly and unreasonably?

Jonathan emphasizes that LSA-R.S. 9:2081 defines "breach" as "[a] violation by a trustee of a duty he owes to a beneficiary," and does not reference the trustee's reasonableness or honesty. Thus, Jonathan contends that the trial court improperly equated its assessment of Kirt and Kellie's reasonableness and honesty with its assessment of whether they breached the Trust, and in doing so committed legal error warranting this Court's *de novo* review.

In response, Kirt and Kellie argue that LSA-R.S. 9:2090 necessitates an evaluation of the reasonableness of a trustee's actions. Louisiana Revised Statute 9:2090 provides in full:

> A. A trustee shall administer the trust as a prudent person would administer it. In satisfying this standard, the trustee shall exercise reasonable care and skill, considering the purposes, terms, distribution requirements, and other circumstances of the trust.
>
> B. A trustee who has special skills or expertise, or has held himself out as having special skills or expertise, has a duty to use those special skills or expertise.

7

Kirt and Kellie also argue that the full text and application of the quoted section of the trial court's judgment is necessary to properly appreciate that the trial court fully analyzed the issues before it. Kirt and Kellie therefore cite the following portion of the trial court's oral reasons for judgment:

> The next question is do I find that in this case there was a breach by the defendants? In other words, do I find that they acted dishonestly and unreasonably? Well, I first note that I find absolutely no factual conclusion that they were dishonest. The Court does not believe that Kirt or Kellie acted dishonestly or with any ulterior motives or malintentions in the handling of this trust. However, whether or not they acted reasonably is not the same determination or the same test that I have to apply.
>
> While they may have acted reasonably in handling a personal account that they might have set up, it was not reasonable to take on the duty imposed in the trust without at least advising themselves of the basic legal obligations of trustees under the Trust Code and by the basic obligations, I refer clearly to the accounting. It clearly requires that trustees shall annually account to the beneficiaries. The failure to maintain the records for the early years of the trust – and when I say maintain the records, they obviously maintained the records during the early years, but they allowed the records to be destroyed. So the failure to account prior to destroying those records, clearly constitutes a breach of the duty. The Court does not find that the records were destroyed to hide any wrongdoing. It was just a poor decision made by the defendants to save space.

Kirt and Kellie claim that the trial court's references to reasonableness and honesty were merely "additional information," and the statements were made "likely for appellate purposes in order to identify factual issues pertaining to the credibility of the witnesses."

Legal error exists upon the application of incorrect principles of law that deprives a party of substantial rights. **Evans v. Lungrin**, 97–0541, (La. 2/6/98), 708 So.2d 731, 735. When legal error has restricted or interdicted the fact-finding process, the law carves out an exception to the appellate "manifest error" or "clearly wrong" standard of review of a trial court or jury's finding of fact. *Id.*

Having thoroughly reviewed the trial court's reasons for judgment and the entirety of the record before us, we find that the trial court committed legal error in its analysis of whether Kirt and Kellie breached the Trust. As we have previously noted, "Breach" is defined as "[a] violation by a trustee of a duty he owes to a beneficiary." LSA-R.S. 9:2081. Determining whether a trustee has complied with his obligations requires a review of the trustee's actions in the performance of the duties incumbent on

8

him as trustee. **In re Harrier Tr.**, 264 So.3d 526 at 535. However, in the quote cited above, the trial court's inquiry was whether Kirt and Kellie "acted dishonestly and unreasonably." Further, in later portions of the transcript, the trial court stated that it was "petitioner's burden of proof to prove this ulterior motive or this dishonesty and the petitioner has not done so," and, "the Court is not convinced there's any dishonesty involved ..."[4]

The Trust Code does not define breach of a trustee's duty in terms of dishonesty, ulterior motives, and malintentions. Rather, the statutory provisions of the Trust Code set forth numerous duties imposing "the very highest possible fiduciary responsibility on the trustee towards the beneficiaries," requiring the trustee to be "chaste in all dealings with the beneficiary," and imposing upon the trustee a "fundamental duty of... loyalty," and then very simply defines "breach" as "[a] violation... of a duty." See LSA-R.S. 9:2081; 1964 Comment (c) to LSA-R.S. 9:2082; **Dunham**, 408 So.2d at 900-901. Thus, in assessing the trustees' actions by considering whether the beneficiary had proven the trustees' dishonesty, ulterior motives, and malintentions, rather than determining whether the trustees' fulfilled their fiduciary duties to the beneficiary, the trial court subjected the trustees to a drastically lower standard than that imposed upon the trustee by law and jurisprudence. This application of an improper legal standard constitutes clear legal error.

In circumstances involving the existence of prejudicial legal errors at the trial level, if an otherwise intact record exists, the appellate court is required to review the record *de novo* and determine the essential facts pursuant to the correct law by a preponderance of the evidence. **Panyanouvong v. T & H Convenience Store, Inc.**, 97-2727 (La. App. 1 Cir. 12/28/98), 734 So.2d 9, 12, writ denied, 99-1839 (La.

---

[4] The trial transcript reveals that the trial court referenced Kirt and Kellie's "good faith" as a determinative factor in this matter during the trial. When counsel for Jonathan objected to Kellie testifying that she had been advised by a CPA to keep five to seven years of Trust records as hearsay, the trial court stated:

> The Court is not going to accept the testimony to determine whether the advice was correct or not or whether she was entitled to rely on it or not. However, it does go to good faith as to what attempt she made to educate herself before making decisions. So I'll allow it for that limited purpose. Continue with your questioning.

10/15/99), 748 So.2d 1148. We shall therefore proceed to conduct a *de novo* review the merits of the case before us.[5]

## REVIEW OF THE TRUSTEES' ACTIONS

Trustees are, by the very definition of their titles, entrusted to administer the Trust solely in the interest of the beneficiary. **In re Harrier Tr.**, 264 So.3d at 535. Determining whether a trustee has complied with his obligations requires a review of the trustee's actions in the performance of the duties incumbent on him or her as trustee. *Id.* Accordingly, we are tasked with reviewing Kirt and Kellie's actions as the trustees of the Trust.

Unfortunately, review of Kirt and Kellie's actions as trustees has been severely obstructed by Kirt and Kellie's decision to destroy and discard the majority of the Trust records in 2013. Kellie testified that she was advised by a CPA that she only needed to keep five to seven years of Trust records. She further stated that she needed to "make room" in her home office and discarded Trust records to do so. Kirt testified that he was aware Kellie was throwing away the bank records, and that he did not object. The records Kellie destroyed with Kirt's approval included bank statements and tax returns for the years 1995-2003. The handwritten check register they produced when Jonathan requested an accounting lacked the full date of many entries and obviously lacked other entries entirely as there were no interest entries after 2005. The check registry also skipped from check number eighteen to check number thirty-seven, with no explanation or documentation regarding the missing checks, other than an order for new checks due to a change of address for the Trust.

Nevertheless, the record before us plainly reflects as follows:

On December 4, 1995, Kirt and Kellie executed the Act of Trust assuming their appointment as Trustees, in the presence of the Settlors, a notary and two witnesses. At trial, both Kirt and Kellie testified that they believed they read the Act of Trust when it was executed, though neither had read it since. Kirt, who testified that he has a bachelor's degree in finance, initially handled the Trust. In 2002, Kellie began to handle

---

[5] Although we find that the appropriate standard of review herein is *de novo* pursuant to our finding of legal error, we note that even under a manifest error review, we would find that the trial court was clearly wrong as to those errors identified herein.

the Trust. Kirt and Kellie each admitted that they have two financial advisors they consult when managing their personal assets. However, Kirt testified that he did not speak to either of his financial advisors regarding the Trust.

Certain practices remained constant throughout the duration of Kirt and Kellie's service as trustees. Specifically, neither Kirt nor Kellie ever provided an accounting to Jonathan, or to his parents when he was a minor. Kirt and Kellie maintained the entirety of the Trust funds in a checking account. The account charges often exceeded the interest owed, causing the Trust to lose value month after month. Both Kirt and Kellie testified that they were aware of this. Kellie testified that this was done in order to keep the Trust funds liquid and available for Jonathan's benefit.

During Kirt and Kellie's tenure as trustees, the Trust routinely paid Jonathan's school tuition, school uniforms, and other educational expenses. The Trust check registry documents the following: August 22, 1996 checks for $2,016.85 and $79.00 written to Calvary Baptist School for tuition and uniforms, respectively; a June 2, 1998 check for $2,300.00 written to St. Anthony School; a July 25, 2000 check for $2,370.00 written to Redeeming Lord of Life; a July 23, 2001 check for $5,200.00 written to Christian Life Academy; and, a April 17, 2002 check for $4,888.00 written to Christian Life Academy.[6] Checks were also written to O'Neil Music Life and Sylvan Learning in the amounts of $780.00 and $2,880.00, respectively.

Four additional checks were written directly to Margo or Jonathan. A June 21, 2002 check for $440.00 written to Margo corresponded with a receipt for Christian Life Academy Summer School in the same amount. An August 1, 2002, check for $15,000.00 was written to "Margo or Jonathan" with a notation reading "truck." Margo testified that she received $15,000 from Eddie for a truck for Jonathan in 2002, though she denied having seen the check that was written from the Trust account for $15,000.00. An August 1, 2002, check for $1,000.00 was written to "Margo or Jonathan" for school uniforms. A December 4, 2002 check for $2,000.00 was written to "Jonathan or Margaret [Margo]" with a notation reading "ring."

---

[6] A check for $12,830.00 was written to St. Stanislaus, but the funds were redeposited because Jonathan ultimately did not attend St. Stanislaus.

11

Margo testified that she sent bills for Jonathan's education to Eddie; she did not send them to Kirt or Kellie. Consistent with Margo's testimony, Kirt testified that he would receive bills for Jonathan's education from his father or his father's assistant.[7] He stated that he talked to his father about some of the bills, but that he usually paid them without discussion. At trial, Kirt and Kellie both denied any knowledge that their father was legally obligated to pay Jonathan's educational expenses. Kirt denied knowledge of "the details of [his] dad's divorce settlement," and Kellie likewise testified that she "[didn't] know what [her] dad was responsible for paying," and she "[didn't] discuss [her] daddy's divorce." Kirt and Kellie both admitted that they never discussed the Trust with Margo.

The Trust check registry reflects that Kirt and Kellie disbursed seven payments from the Trust to New York Life. Of the seven payments made to New York Life, two were notated "loan balance," one dated November 25, 1997, for the amount of $12,466.27 and the second dated April 23, 1998, for $5,969.31. A notation reading "int on loan balance" followed a third payment for $167.80 made on December 17, 1997. A fourth payment for $65.43 on January 21, 1999, was followed by the notation "loan payment." The fifth payment for $2.82 on August 27, 1999, and the sixth payment for $1,890.00 on August 22, 2000, were not described in the check registry. The seventh payment for $1,890.00 on August 28, 2001, was followed by the notation "Eddie policy premium."

Kirt testified that he wrote the checks for $12,466.27 and $5,969.31 to New York Life "to pay off a loan balance on the policies that [Jonathan] was a beneficiary of." Kirt stated that he assumed his father had taken the loan out on the policy and that the payment was made because "we thought it would be prudent to keep the policies in place." Kirt testified that he wrote the checks for $167.80, $65.43, and $2.82 to pay interest on the loan taken on the New York Life policy. Kirt stated that the two checks for $1,890.00 were "probably" premium payments. However, Kirt was unable to provide

---

[7] Kellie Chouest Duet's sister-in-law, Karen Duet, was Eddie's assistant at Edison Chouest Offshore.

premium notices, receipts, a copy of the New York Life policy, or any other documentation supporting the payments to New York Life.

The Trust check registry also contained records of a January 11, 2005 check to Edison Chouest Offshore for $25,595.00, notated "ECO" and "pay back dad." A February 17, 2006 check to Eddie for $3,000.00 was notated "Eddie Chouest Loan." In this regard, Kirt testified that he did not know why these payments were made. Kellie confirmed that "ECO" meant Edison Chouest Offshore. Kellie testified that she did not remember why she wrote the check for $25,595.00 but that "[i]t would have been for Jonathan." Kellie stated that she wrote the check for $3,000.00 to her father because of "something to do with a court appearance... [Eddie] owed money." Kellie testified that to keep her father out of jail, "Kirt and I, giving our share of the money to help him out and I took it upon myself, being he has three children, to take my brother's share out...". Kellie stated that Kirt told her to put the money back, which she did on November 23, 2011.

On October 22, 2014, a payment of $3,510.00 was made from the Trust account to Baldwin, Haspel, Burke & Mayer, LLC, the law firm where Mr. Rittenberg was employed. The corresponding Baldwin Haspel bill was sent to the Trust through Kirt. The $3,510.00 fee was incurred for services rendered between June 27, 2014, through September 5, 2014. Of the twenty-one line items reflected in the bill, sixteen post-dated the July 24, 2014 letter from Jonathan's counsel to Kirt and Kellie requesting an accounting.

With regard to Dolores's succession, Kirt testified that the Trust received only $32,950.50, instead of $100,000.00 as provided for in Dolores's will and as received from Edison, Sr.'s succession, because estate taxes on both bequests were due and paid from the $100,000.00 from Dolores's succession.

With respect to Kirt and Kellie's purchase of their father's shares in Edison Chouest Offshore, Kirt and Kellie each testified that they paid for their respective shares over time. Kirt stated that he paid for his half of the shares over time until 2005, while Kellie testified that she did not remember when she finished paying her father. Kirt admitted that the amount he owed his father over that period of time far exceeded the

13

total of all of the insurance and loans paid from the Trust. Kellie stated that she purchased her half of her father's shares for over $2 million. In sum, during the period of time in which the majority of the challenged disbursements were made, Kirt and Kellie had agreed to pay Eddie Chouest Jr. approximately four million dollars.

## BREACH OF TRUST AND DAMAGES

Kirt and Kellie voluntarily assumed the legal obligations and duties of trustees when they executed the Act of Trust in 1995.[8] Kirt and Kellie both testified that they did not read the Act of Trust again after executing it, and attempted to rely on this fact to excuse their failures to comply with the terms of the Trust. However, Louisiana courts have long held that a party may not avoid the provisions of a written contract he signed but failed to read or have explained to him. That is so because, "[s]ignatures to obligations are not mere ornaments." **Peironnet v. Matador Res. Co.**, 2012-2292 (La. 6/28/13), 144 So.3d 791, 811. Moreover, it is clear that Kirt and Kellie are both sophisticated parties with respect to financial matters. This renders their claim of ignorance particularly difficult to accept. See **Peironnet**, 144 So.3d at 814. Kirt and Kellie were indisputably bound both by the Louisiana Trust Code and by the terms of the Trust at issue. Having thoroughly reviewed the entirety of the record before us, we find that Kirt and Kellie failed in their obligations and duties as Trustees of the Trust. These failures, which are in no way excused by Kirt and Kellie's self-professed unfamiliarity with the obligations they voluntarily assumed, constitute multiple breaches of the Trust and caused damages for which Kirt and Kellie are now liable to Jonathan.

---

[8] Immediately preceding Kirt and Kellie's signatures, Section 5.4 of the Trust document reads as follows:

> Acceptance. The Trustees accept the obligations and duties imposed above and acknowledge and accept, specifically, delivery of legal title to the property described above.

The courts of our state have long held that "[i]f a party can read, it behooves him to examine an instrument before signing it; and if he cannot read, it behooves him to have the instrument read to him and listen attentively whilst this is being done." **Tweedel v. Brasseaux**, 433 So.2d 133, 137 (La. 1983), quoting **Snell v. Union Saw Mill Company**, 159 La. 604 at 608, 105 So. 728 at 730 (1925). The presumption is that parties are aware of the contents of writings to which they have affixed their signatures. The burden of proof is upon them to establish with reasonable certainty that they have been deceived. Id., citing **Bagneris v. Oddo**, 2 Pelt. 278, 285 (La. App. 1919).

14

<u>Failure to Administer Trust in Interest of Beneficiary; Failure to Account; Failure to
Furnish Information</u>

Louisiana Revised Statute 9:2082, entitled "administration in interest of beneficiary; duty of impartiality," provides in pertinent part that "[a] trustee shall administer the trust solely in the interest of the beneficiary." Further, 1964 Comment (c) to LSA-R.S. 9:2082 provides that "[t]he fundamental duty that a trustee owes a beneficiary is the duty of loyalty, a duty that all states recognize."

Louisiana Revised Statute 9:2088, entitled "Accounting," provides in pertinent part:

> A. A trustee is under a duty to a beneficiary to keep and render clear and accurate accounts of the administration of the trust. If the trust is revocable, the trustee has a duty to account to the settlor only.
>
> B. A trustee shall render to a beneficiary or his legal representative at least once a year a clear and accurate account covering his administration for the preceding year. His first annual account shall relate to the calendar year during which he became responsible for the trust property, or, at his option, the first accounting period of not more than twelve months and shall be rendered within ninety days after the expiration of that calendar year or accounting period. Each annual account shall show in detail all receipts and disbursements of cash and all receipts and deliveries of other trust property during the year, and shall set forth a list of all items of trust property at the end of the year.

Louisiana Revised Statute 9:2089, entitled "furnishing of information," provides in full:

> A trustee shall give to a beneficiary upon his request at reasonable times complete and accurate information as to the nature and amount of the trust property, and permit him, or a person duly authorized by him, to inspect the subject matter of the trust, and the accounts, vouchers, and other documents relating to the trust.

Section 3.4(b) of the Act of Trust provides in pertinent part:

> The Trustees shall give immediate notice to the beneficiary of all contributions and additions to the trust in order that the beneficiary shall have an opportunity to timely exercise the demand rights provided below...

While Kirt and Kellie do not contest that they breached the duty to account, they argue that they did not breach their duty to furnish information. Kirt and Kellie maintain that they complied with their duty to furnish information because they provided Jonathan with records when he requested an accounting in 2014. However, because of Kirt and Kellie's decision to discard Trust records in 2013, the records provided in 2014 were not "complete and accurate." Rather, they were all that was available. It would be

15

nonsensical to permit trustees to escape their duty to furnish information by rendering the information unobtainable.

Further, it is indisputable based on Kirt and Kellie's own testimony that they did not provide an annual accounting to Jonathan or either of his parents, did not give Jonathan complete and accurate information as to the nature and amount of the Trust property, did not permit Jonathan to inspect the Trust records, did not give immediate notice to the beneficiary of all contributions and additions to the trust, and did not keep and render clear and accurate accounts of the Trust. Kirt and Kellie clearly breached both the duty to account and the duty to furnish information as required by the Louisiana Trust Code, as well as the duty to give immediate notice of contributions and additions to the Trust as set forth in the Act of Trust.

Moreover, Kirt and Kellie had a fundamental duty of loyalty and forthrightness owed to Jonathan to administer the trust solely in his best interest, as the beneficiary. Instead, the record indicates that the defendants engaged in transactions that were not in plaintiff's best interest, and were, in fact, detrimental to the Trust. For example, they provided loans to their father with Trust funds, used Trust funds for bail money (although it was later repaid), and paid their own legal fees incurred in connection with the controversy involving the Trust. All of these actions were conducted without any knowledge or notice to the plaintiff. See LSA-R.S. 9:2082 and 1964 Comment C to LSA-R.S. 9:2082; see also LSA-R.S. 9:2201. Clearly, Kirt and Kellie breached their duty to administer the Trust solely in Jonathan's interest as the beneficiary.

However, Kirt and Kellie argue that it is undisputed that "no loss was sustained pursuant to La. R.S. 9:2201 due to any failure to furnish information." This is incorrect. As a result of Kirt and Kellie's failure to properly disclose to or inform Jonathan of the terms and extent of the trust, as well as their failure to timely identify and properly account for funds being disbursed and the nature of the transactions they were engaging in, Kirt and Kellie deprived Jonathan of the opportunity to make any meaningful decisions or to obtain an accurate identification of the source of the funds he was receiving. These actions were detrimental to Jonathan and resulted in depreciation in the value of the Trust estate. Thus, the Trust sustained losses as a direct result of Kirt and Kellie's breach of

16

their duties to provide an accounting, furnish information, and administer the Trust solely in Jonathan's interests.

Particularly with respect to Jonathan's educational expenses and the premium payments to New York Life, if Kirt and Kellie had complied with their duty to account and to furnish information, Margo could have objected to the use of Trust funds to pay for Jonathan's educational expenses and the premium payments to New York Life, on the basis that Eddie was personally obligated to pay these expenses pursuant to the child support order.[9] Accordingly, the following payments of Jonathan's educational expenses from Trust funds constitute breaches of the Trust and caused the Trust to sustain a loss in value under LSA-R.S. 9:2201: the August 22, 1996, checks for $2,016.85 and $79.00 written to Calvary Baptist School for tuition and uniforms, respectively; the June 2, 1998, check for $2,300.00 written to St. Anthony School; the July 25, 2000, check for $2,370.00 written to Redeeming Lord of Life; the July 23, 2001, check for $5,200.00 written to Christian Life Academy; the April 17, 2002 check for $4,888.00 written to Christian Life Academy; the June 21, 2002, check for $440.00 written to Margo and corresponding with a receipt for Christian Life Academy Summer School in the same amount; the August 1, 2002, check for $1,000.00 written to "Margo or Jonathan" for school uniforms; and the December 4, 2002, check for $2,000.00 written to "Jonathan or Margaret [Margo]" with a notation reading "ring." We thereby award damages to Jonathan in the amount of each check, plus legal interest from the date of disbursement until February 27, 2015, the date of judicial demand.

Based on the same analysis, the alleged premium payments to New York Life constitute breaches of the Trust and caused the Trust to sustain a loss in value under LSA-R.S. 9:2201: the August 22, 2000, check for $1,890.00; and the August 28, 2001,

---

[9] The child support order at issue provided in pertinent part:

> Edison S. Chouest, Jr., shall pay all required school tuition, registration, uniform, books, other school related expenses, and any summer camp expenses for the minor child through December, 2011.
>
> ***
>
> [A]s a further component of child support, the plaintiff, Edison S. Chouest, Jr., shall maintain in full force and effect, through and inclusive of the last day of December, 2011, life insurance with Jonathan Chouest as the direct or indirect beneficiary of the three (3) existing New York Life Insurance policies... or any replacement polices for the benefit of the minor child, Jonathan Chouest, with a net death benefit of approximately Two Hundred Eighty Thousand and 00/100 ($280,000.00) Dollars.

17

check for $1,890.00. [10] We thereby award damages to Jonathan in the amount of each check, plus legal interest from the date of disbursement until February 27, 2015, the date of judicial demand.

The bill from Baldwin Haspel and corresponding letters submitted to the trial court, as well as Kirt and Jonathan's testimony, indicate that these legal fees were incurred by Kirt in connection with the brewing dispute with Jonathan, as attorneys at Baldwin Haspel corresponded with Jonathan's counsel and Kirt. Kirt and Kellie's multiple and blatant breaches of the Trust were the cause of the dispute and the $3,510.00 legal bill. Therefore, we find that the payment for legal fees incurred because of this dispute was not made in Jonathan's best interests. This breach of LSA-R.S. 9:2082 caused the Trust to sustain damages. Kirt and Kellie are found liable to Jonathan in the amount of $3,510.00, plus legal interest from October 22, 2014 until February 27, 2015, the date of judicial demand.

With respect to the payment Jonathan should have received on his twenty-fifth birthday according to the terms of the Trust, we find that the delay in payment was solely the result of Kirt and Kellie's inexcusable inattention to the Trust. This breach caused damage to Jonathan as he was deprived of the use of $35,137.07 for nearly three years. However, as Jonathan does not seek any item of damages with respect to this delayed disbursement, we will not review same.

### Loan to Trustee by Himself; Failure to Control and Preserve Trust Property; Dealing on Own Account

We consider LSA-R.S. 9:2083, LSA-R.S. 9:2084, and LSA-R.S. 9:2091 together here.

Louisiana Revised Statute 9:2083, entitled "[d]ealing on own account," provides:

A trustee in dealing with a beneficiary on the trustee's own account shall deal fairly with him and communicate to him all material facts in connection with the transaction that the trustee knows or should know.

Louisiana Revised Statute 9:2084, entitled "[l]oan by trustee to himself," provides in pertinent part:

---

[10] We further note that no documentary evidence was provided by Kirt and Kellie to establish that these payments were in fact for premiums, or for a policy naming Jonathan as the beneficiary.

18

... An individual trustee shall not lend funds to himself, or to his relative, employer, employee, partner, or other business associate, unless the trust instrument provides otherwise.

Louisiana Revised Statute 9:2091, entitled "[c]ontrol and preservation of trust property," provides:

A trustee is under a duty to a beneficiary to take reasonable steps to take, keep control of, and preserve the trust property.

We agree with the trial court that the payments on loans taken against the New York Life policy were loans to Eddie, Kirt and Kellie's father, in violation of the prohibition against lending funds to a relative set forth in LSA-R.S. 9:2084. The following payments to New York Life clearly caused the Trust to sustain a loss under LSA-R.S. 9:2201: the November 25, 1997, check for $12,466.27; the April 23, 1998, check for $5,969.31; the December 17, 1997, check for $167.80; the January 21, 1999, check for $65.43; and the August 27, 1999, check, for $2.82. Likewise, as noted by the trial court, the January 11, 2005 check to Edison Chouest Offshore for $25,595.00, notated "ECO" and "pay back dad," constituted a violation of LSA-R.S. 9:2084. However, we note that Kirt and Kellie have not assigned the award of these amounts as error in their answer to appeal. Therefore, we need not address same.

With regard to the February 17, 2006 check to Eddie for $3,000.00 notated "Eddie Chouest Loan," the notations in the check registry establish that this disbursement was related to a loan made to Eddie or Edison Chouest Offshore. This is the same $3,000.00 Kellie testified had "something to do with a court appearance" and was re-deposited into the Trust account. As Jonathan does not seek any item of damages with respect to this disbursement, we will not review same.

### Failure of Prudent Administration

Louisiana Revised Statute 9:2090, entitled "[p]rudent administration," provides that a trustee shall administer the trust as a prudent person would administer it, with reasonable care and skill, considering the purposes, terms, distribution requirements, and other circumstances of the trust. When a trustee has special skills or expertise, or has held himself out as having special skills or expertise, the trustee has a duty to use those special skills or expertise. Jonathan argues that Kirt and Kellie failed to prudently

19

administer the Trust property by maintaining the Trust funds in a low-interest checking account wherein the Trust frequently lost value because the monthly fees exceeded the interest earned. Kirt and Kellie argue that the Act of Trust permitted the Trust funds to be kept in a checking account where they lost value.

Section 4.2 of the Trust provided:

Additional Powers. Without limiting Section 4.1, the Trustees shall have the following powers which shall be exercised in the best interest of the beneficiary:

*** 

C. To hold and retain trust property in the form in which the same may be when received by the Trustees, either as original trust property or otherwise, as long as the Trustees may deem advisable, whether or not such property is productive and notwithstanding that the same may not be prescribed or authorized by the laws relating to the investment of trust funds.

The Trust did permit Kirt and Kellie to hold the Trust funds in a checking account even if doing so was not productive. The same section of the Trust also mandates that this power be exercised in the best interest of the beneficiary. Here, Kirt and Kellie attempt to plead ignorance of the terms of the Trust while simultaneously seeking to rely on the terms of the Trust to secure immunity for the Trust's lost value. We find this to be self-serving and duplicitous. Within the facts of this case, the decision to retain the Trust property in the form in which it was received caused the Trust to lose value, and was clearly not made in the best interest of the beneficiary. However, as it was authorized by the Trust, and because of Kirt and Kellie's testimony regarding their intent to maintain the fluidity of the funds, we reluctantly conclude that we are unable to find that this constitutes a breach of the Trust for which we can award damages.

### Disbursements Not Found to be Improper

Jonathan seeks damages for the disbursements to the IRS, the US Treasury, and the Department of Revenue ("alleged tax disbursements"). Jonathan also seeks damages for that portion of Dolores's $100,000.00 bequest to him that Kirt and Kellie did not deposit into the Trust, allegedly because it was owed for inheritance taxes ("alleged inheritance tax withholding"). Unlike the disbursements for Jonathan's educational expenses and the New York Life payments, for which all records other than

20

the check registry had been destroyed, records of the alleged tax disbursements and alleged inheritance tax withholding would still be obtainable. Thus, in the absence of positive evidence demonstrating that these payments were improperly made, we are unable to find that Kirt and Kellie breached the Trust with respect to the alleged tax disbursements or alleged inheritance withholding.

We do not find a breach with respect to the Trust's payment of costs of checks for the Trust account, as such expenses are reasonably incurred in the administration of a checking account. Similarly, we do not find a breach with respect to the disbursements to O'Neil Music Life and Sylvan Learning, or the $15,000.00 disbursement to purchase a truck for Jonathan. These expenses were for Jonathan's benefit and do not fall into the categories of expenses that Eddie was obligated to pay pursuant to the child support order.

We find that the four-year pattern of $2,000.00 Christmas gifts from Settlors is, without corroborating evidence, insufficient to find that Kirt and Kellie failed to deposit Christmas gifts in other years.

### ANSWER TO APPEAL: AWARDS OF LEGAL INTEREST FROM DATE OF DISBURSEMENT

This Court has previously held that interest that would have accrued to a trust is an item of damages. **Maginnis v. Maginnis**, 449 So.2d 573, 575 (La. App. 1 Cir. 1984), writ denied, 456 So.2d 1015 (La. 1984), citing **Bridwell v. Bridwell**, 381 So.2d 566 (La. App. 2 Cir. 1980). In **Matter of Donald E. Bradford Tr.**, 524 So.2d 1213, (La. App. 1 Cir. 1987), writ granted, 526 So. 2d 785 (La. 1988), and aff'd in part, rev'd in part, 538 So.2d 263 (La. 1989), the plaintiffs brought suit to force the trustee of the subject trust to resign, and to recover damages incurred by the trust as a result of breaches of trust by the trustee. The trial court ordered the trustee to resign, but did not find the trustee was liable to the trust for breach of trust. This Court upheld the trial court's judgment with respect to the trustee's resignation, but reversed the trial court's finding that the trustee was not liable. This Court imposed liability on the trustee both for losses sustained when the trustee permitted the settlor to use trust funds for his own benefit during his tenure as trustee, and for losses the trust sustained during his

21

predecessor's tenure as trustee, because the trustee had permitted his predecessor to resign without providing a final accounting. *Id.*, 524 So.2 at 1218-19.

This Court then granted rehearing to determine whether the plaintiffs were also entitled to legal interest compounded annually on the sums awarded to them for breach of trust. The Court wrote:

> Bogert, Trusts and Trustees (2d ed. rev. 1982), § 863, states that in the absence of statute or contract, the court in the exercise of its discretion may require the trustee to pay the legal rate of interest as compensation for the beneficiary's loss of the use of his fund. Bogert, *op. cit., supra,* states that compound interest should not be awarded as a punishment, but as compensation.

> Scott on Trusts (3d ed. 1967) § 205, states where a trustee commits a breach of trust, the beneficiary has the option to charge the trustee with any loss which resulted from the breach of trust, or with any profit which would have accrued if there had been no breach of trust, or with any profit made through breach of trust. *Scott, op. cit.* § 207.2 seems to consider the awarding of interest as a punishment for intentional breach of trust, but he is a less recent authority.

> In the present case, the beneficiaries seek compound interest which they consider to be the profit which would have accrued if there had been no breach of trust. The applicable statute, LSA-R.S. 9:2201, provides as follows:

> If a trustee commits a breach of trust he shall be chargeable with:

> (1) A loss or depreciation in value of the trust estate resulting from a breach of trust; or

> (2) A profit made by him through breach of trust; or

> (3) A profit that would have accrued to the trust estate if there had been no breach of trust.

> The use of the word "shall" in the preamble indicates that the trial court is required to charge the trustee with a profit that would have accrued to the trust estate if there had been no breach of trust. Bogert, *id.,* § 863, states that the award of interest or compound interest generally depends on the facts of each particular case in the absence of statute. Here we hold that both statute (LSA-R.S. 9:2201) and the facts of the case require that interest, compounded annually, and accruing annually from the date of diversion of each portion of the trust assets, be awarded the beneficiaries.

> We note that our holding, as Bogert and Scott bear out, is thoroughly in accord with the trust law generally prevailing in this nation.

**Bradford**, 524 So.2d at 1220-21.

The Louisiana Supreme Court affirmed this award of interest in **Matter of Donald E. Bradford Tr.**, 538 So.2d 263 (La. 1989):

> We find no error in the court of appeal's decision to apply the legal rate of interest. In the absence of a contract which specifically provides for the rate of interest applicable to the loss in question, the court may require the trustee to pay the legal rate of interest as compensation for the beneficiary's loss of use of the trust proceeds. Here there is no provision

in the trust instrument which designated an applicable rate of interest for funds owed to the trust. Thus we find no error in the court of appeal's decision to apply the legal rate of interest under these circumstances.

The court of appeal also ordered that the interest due should be compounded annually. [Trustee] argues that the award of compound interest is essentially intended as a penalty, and that punitive damages are not authorized by law in this situation.

An award of compound interest does not serve as a penalty in this case, but instead serves as a means for allowing the trust to be compensated for the interest or other profit that it would have made on the diverted or lost funds through investments had there been no diversions or losses. As noted by the court of appeal, an award of compound interest is proper under La.R.S. 9:2201(3), which provides that the trustee shall be liable for profits which would have accrued if there had been no breach of trust. We therefore affirm the court of appeal's award of compound interest.

As noted by the court of appeal, interest should be calculated on each diverted sum that forms a portion of the total judgment against Wharton from the date of the particular diversion involved. With respect to the lost dividends, interest should be calculated from the date each dividend was payable (as shown on trial exhibit Wilson 3).

**Bradford**, 538 So.2d at 269 (citations omitted).

Kirt and Kellie argue that there is no authority in law for the award of legal interest from the date of disbursement because **Bradford** is distinguishable in key aspects and therefore inapplicable. Specifically, Kirt and Kellie maintain that the breach of trust was particularly egregious in **Bradford**, whereas any breaches in this matter were accidental, honest, and brought no personal gain to Defendants. We find no merit in this argument as the **Bradford** Courts did not base the award of interest on the perceived severity of the breach in question.

Kirt and Kellie additionally assert that the Trust funds would not have earned any interest because they were kept in a checking account "for the benefit of liquidity to meet the everchanging needs of a growing child." The reason the Trust funds would not have earned interest is because Kirt and Kellie chose to leave the funds in the checking account, rather than moving even a portion of the Funds into an interest-bearing account to be used as needed. Further, their failure to provide an annual accounting prevented the beneficiary from questioning the management of the Trust. We therefore reject this argument as well.

Kirt and Kellie further argue that an award of legal interest from the date of disbursement until the date suit was filed constitutes an improper expansion of Jonathan's pleadings because Jonathan's petition prayed for "legal interest thereon [any

judgment] from the date of judicial demand until paid" and did not pray for legal interest from the date of each disbursement. However, the **Bradford** decision explicitly states that "an award of compound interest is proper under La.R.S. 9:2201(3), which provides that the trustee shall be liable for profits which would have accrued if there had been no breach of trust," and Jonathan's petition specifically alleges that "[a]s a result of these breaches of trust and breaches of contract, Defendants are liable unto Petitioner for monetary damages pursuant to La. Rev. Stat. 9:2201, along with damages for breach of contract." **Bradford**, 538 So.2d at 269. In light of the petition's specific reference to damages pursuant to LSA-R.S. 9:2201, which is the statute **Bradford** cites to and relies upon in its analysis affirming an award of legal interest compounded annually, there appears to be no basis for Kirt and Kellie's argument that the award constituted an improper expansion of the pleadings.

Kirt and Kellie further argue that the award amounts to punitive damages not specifically authorized by law in this situation. However, the Supreme Court found no merit in the same argument when it was made in **Bradford**. Instead, the Supreme Court in **Bradford** wrote that "[a]n award of compound interest does not serve as a penalty in this case, but instead serves as a means for allowing the trust to be compensated for the interest or other profit that it would have made on the diverted or lost funds through investments had there been no diversions or losses." **Bradford**, 538 So.2d at 269.

In this matter, as in **Bradford**, there is no provision in the trust instrument designating an applicable rate of interest for funds owed to the trust. Therefore, this Court may require the trustees to pay the legal rate of interest as compensation for the beneficiary's loss of use of the Trust proceeds. Under **Bradford**, we find that an award of the legal rate of interest from the date of the disbursements is proper in these circumstances. Accordingly, we deny the relief requested in Kirt and Kellie's answer to appeal.

## NO FAILURE TO MITIGATE DAMAGES

Kirt and Kellie have consistently focused on what Eddie, Margo, and Jonathan knew about the Trust prior to Mr. Rittenberg's telephone call to Jonathan in 2014,

24

presumably to advance their allegation that Jonathan failed to mitigate his damages.[11] At trial, Jonathan explicitly denied knowledge of the Trust prior to being contacted by Leon Rittenberg in 2014. Kirt testified that he had never told Jonathan about the Trust or had a conversation with him about the Trust. Kellie likewise testified that she had never told Jonathan about the Trust or had a conversation with him about the Trust. Both Kirt and Kellie participated in the decision to discard the Trust records in 2013 to "make room" in Kellie's home office. They did not ask Jonathan if he would like to keep the Trust records.[12]

The scope of a party's duty to mitigate depends on the particular facts of the individual case, and a party is not required to take actions which would likely prove unduly costly or futile. **Ciolino v. First Guar. Bank**, 2012-2079, 2012-2080 (La. App. 1 Cir. 10/30/13), 133 So.3d 686, 697. However, the failure to mitigate damages is an affirmative defense, and the burden of proof is on the party asserting the defense. *Id.* In light of the consistent testimony that Kirt and Kellie never spoke to Jonathan about the Trust prior to 2014, we decline to find that Kirt and Kellie have proven that Jonathan knew of the Trust prior to 2014. Jonathan never received the required accounting and information from the trustees, and was never presented with an opportunity to mitigate the damages he suffered as a result of Kirt and Kellie's breaches of the Trust; therefore, he cannot have failed in doing so. For these reasons, the damages assessed herein are fully cast upon Kirt and Kellie.

---

[11] Pursuant to Louisiana Civil Code article 2002, an obligee must make reasonable efforts to mitigate the damage caused by the obligor's failure to perform. When an obligee fails to make these efforts, the obligor may demand that the damages be accordingly reduced.

[12] Kirt and Kellie relied on a transcript from a deposition given by Margo in 2006 in connection with a prior lawsuit in their attempts to prove that Jonathan was aware of the Trust prior to 2014. The transcript reflected that Margo said, "when Jonathan talked to his dad about the truck and found out that the down payment was coming out of his trust fund, he did not want to use that money because that was set aside for his college fund." When Margo was questioned at trial whether her previous deposition transcript demonstrates that she and Jonathan were aware of the Trust in 2006, Margo replied that she did not think she was, and that she "[didn't] know what Jonathan knew," she "just repeated what Jonathan said." Jonathan testified that before learning of the Trust in 2014, he was aware only that Kirt and Kellie were the custodians of a "college fund" consisting of the certificates of deposit his grandparents had given him as Christmas gifts when he was a child. Jonathan stated that he thought all of the money that had been available was gone, because he had asked Eddie how much money was available for him to go to college when he was in high school, and Kellie had told Eddie there was no money left. We find Jonathan and Margo's explanation credible and reasonable.

## CONCLUSION

We hereby affirm the March 29, 2018 judgment of the trial court ordering Kirt Chouest and Kellie Chouest Duet to pay damages to Jonathan Chouest as follows:

1.    $12,466.27, plus the legal interest rate in effect from November 25, 1997 through February 27, 2015;

2.    $167.80, plus the legal interest rate in effect from December 17, 1997 through February 27, 2015;

3.    $5,969.31, plus the legal interest rate in effect from April 23, 1998 through February 27, 2015;

4.    $65.43 plus the legal interest rate in effect from January 21, 1999 through February 27, 2015;

5.    $2.82 plus the legal interest rate in effect from August 27, 1999 through February 27, 2015;

6.    $25,595.00, plus the legal interest rate in effect from January 11, 2005 through February 27, 2015;

We hereby amend the March 29, 2018 judgment of the trial court, ordering Kirt Chouest and Kellie Chouest Duet to pay the following damages to Jonathan Chouest, in addition to those previously awarded by the trial court:

7.    $1,890.00 plus the legal interest rate in effect from August 22, 2000 through February 27, 2015;

8.    $1,890.00 plus the legal interest rate in effect from August 28, 2001 through February 27, 2015;

9.    $3,510.00, plus the legal interest rate in effect from October 22, 2014 until February 27, 2015;

10.   $2,016.85 plus the legal interest rate in effect from August 22, 1996 until February 27, 2015;

11.   $79.00 plus the legal interest rate in effect from August 22, 1996 until February 27, 2015;

12.   $1,000.00 plus the legal interest rate in effect from August 1, 2002 until February 27, 2015;

13.   $2,000.00 plus the legal interest rate in effect from December 4, 2002 until February 27, 2015;

14.   $2,300.00 plus the legal interest rate in effect from June 2, 1998 until February 27, 2015;

15.   $2,370.00 plus the legal interest rate in effect from July 25, 2000 until February 27, 2015;

16.   $5,200.00 plus the legal interest rate in effect from July 23, 2001 until February 27, 2015;

17.   $4,888.00 plus the legal interest rate in effect from April 17, 2002 until February 27, 2015;

18. $440.00 plus the legal interest rate in effect from June 21, 2002 until February 27, 2015.

All damages are to be paid together with judicial interest from the date of judicial demand until paid.

We affirm the trial court's judgment as amended herein. All costs are assessed against appellees, Kirt Chouest and Kellie Chouest Duet.

**AMENDED; AND AFFIRMED AS AMENDED; ANSWER TO APPEAL DENIED.**